GEORGE H. HOLT, Appellant, *vs.* ALBERT· L. HENDEE,
· · County Clerk,·*et al.* Appellees.

*Opinion filed December 21, 1910— Rehearing denied Feb. 10, 1911.*

1. TAXES—*the term "domicile" means the true, permanent home
and principal establishment.* In its ordinary acceptation the term
"domicile" means where a person lives or has his home, and in a
legal sense ·means the true, fixed, permanent home and principal
establishment of a·person, to which, whenever he is absent, he has
an intention of returning. ·

2. SAME—*what is necessary to effect a change of domicile.* To
effect a change of domicile there must be an actual abandonment
of the first domicile coupled with an intention not to return to it,
and there must be a new domicile acquired by actual residence
within another jurisdiction, coupled with the intention of making
the last acquired residence a permanent home.

3. SAME—*a mere intention to change domicile is not sufficient.*
In order to bring about a change of domicile it is necessary that·
there be not only an intention to change the residence, but the
change must actually be made by abandoning the old and perma-
nently locating in the new place of residence.

4. SAME—*on question of domicile a person's acts have more
weight than his words.* Upon the question of domicile the inten-
tion of the person is not necessarily determined from his state-
ments or declarations but may be inferred from his acts and the
surrounding circumstances, which may entirely disprove such state-
ments and declarations. ·

5. SAME—*when judgment of foreign State is not res judicata
of question of domicile.* A judgment by a court in a foreign State
finding that a certain person was a resident of that State in the
year 1904 and qualified to act as administrator there is not *res
judicata* of the question of such person's actual domicile five years
later, so as to preclude the taxing authorities of a county in Illi-
nois from assessing personal property omitted in previous years.

6. SAME—*what facts do not show that domicile is not in Illi-
nois.* The facts that a person claims California as his residence,
that he has twice acted as administrator there and has declared
his residence in other States for certain purposes do not establish
that he is not a resident of Illinois, where the evidence shows that
he has' an undivided interest in a house in a suburb of Chicago
and maintains no establishment in any other place; that he has
resided· there a part of the time for many years, traveling back
and forth on the train to his office in Chicago; that he is presi-
dent of a water company in such suburb and active in municipal

and church affairs, and that, though he travels extensively, he has made no real home elsewhere.

7. SAME—*board of review is required to proceed as an assessor would.* The board of review, in making assessments, is required to proceed as an assessor would and to make a list of property assessed, setting down in the column opposite the separate kinds of property the assessed value thereof.

8. SAME—*presumption where board of review makes an assessment.* Where a board of review assesses personal property under the thirty-sixth class as "all other property required to be listed," the presumption arises that such assessment was for property not included under any of the first thirty-five classes.

9. SAME—*what must be shown by one seeking to enjoin collection of tax on assessment for omitted property.* One applying to equity to enjoin the collection of taxes extended on an assessment of personal property made by the board of review under the classification "all other property required to be listed," must show that he does not own any property falling under such classification, or if he does own such property, that the valuation by the board of review was excessive and fraudulently and dishonestly made. (*Pratt* v. *Raymond,* 188 Ill. 469, *Carney* v. *People,* 210 id. 434, and *Weber* v. *Baird,* 208 id. 209, followed.)

10. SAME—*fact that property is not fully identified not ground for injunction.* The mere fact that personal property assessed by the board of review is not as fully identified and described as the law requires does not, alone, furnish sufficient ground to enjoin the collection of the tax.

CARTER, J., dissenting.

APPEAL from the Circuit Court of Lake county; the Hon. ROBERT W. WRIGHT, Judge, presiding.

COOKE, POPE & POPE, (FRANK L. SHEPARD, of counsel,) for appellant.

RALPH J. DADY, State's Attorney, and DAVID H. JACKSON, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellant, George H. Holt, filed his bill for injunction in the circuit court of Lake county, seeking to restrain Albert L. Hendee, county clerk of said county, from extending

any taxes against him for the year 1909 upon an assessment of personal property made and returned by the board of review. By supplemental bills thereafter filed the town collector of the town of Shields and the county collector of Lake county were made defendants, and an injunction was sought against each, respectively, to restrain the collection of taxes extended upon said assessment. Answers were filed by the defendants and replications thereto by the complainant, and upon the issues thus formed a hearing was had before the chancellor, which resulted in a decree dismissing the bill for want of equity. From that decree appellant has prosecuted an appeal to this court.

The record shows that appellant did not, during the year 1909 or during previous years, list any personal property for taxation in Lake county. At its session in 1909 the board of review caused appellant to appear before it, and upon his refusal to list his personal property made an original assessment of $75,000 under the item "all other personal property required to be listed," and thereon fixed the assessed value of the appellant's personal property at $25,000. The board entered this assessment upon the assessment books of the town of Shields, in the county of Lake, and returned the same to the county clerk as the basis for the extension of taxes for the year 1909. Appellant in his bill charged, as grounds for the relief sought, first, that he was not on April 1, 1909, a resident of the town of Shields or of the State of Illinois but was at that time a resident of the State of California; and second, that the board of review made the assessment in a lump sum and did not specify the kind or kinds of property assessed, and here contends that both of those grounds were established by the evidence and require the issuance of the injunction as prayed for in the bill.

The evidence upon the question of the residence of appellant consisted to a large extent of his own testimony, and while he testified that he went to California in 1904

with the intention of making his home in that State, that
he had during that year established his residence in San
Diego county and had never since changed his residence,
and that he is now, and was on April 1, 1909, a resident
of that county, we are of the opinion, from a careful con-
sideration of the whole of his testimony and of the testi-
mony of various residents of the town of Shields, that the
circuit court was fully justified in reaching the conclusion
that appellant was on April 1, 1909, a resident of the town
of Shields, in this State.

Appellant is now fifty-seven years of age and has never
been married. He has been, and is now, engaged in vari-
ous business pursuits in various States of the Union, and,
as convenience or necessity required, has declared his legal
residence at various places without in any material manner
changing his visible mode of living. He was born in the
city of Chicago, and when about seven years of age re-
moved with his parents to Lake Forest, which is now a
suburb of Chicago and which is located in the town of
Shields, in Lake county, Illinois, where his parents resided
until their respective deaths, his father dying in 1899 and
his mother in 1903. In 1874 he went abroad and spent
about two years in travel and study. He then returned to
his home at Lake Forest, where he remained until 1878,
when he went to the State of Colorado and claims to have
been a resident of that State until 1891, although he spent
a considerable portion of his time during that period at the
family homestead in Lake Forest. He testified that from
1878 to 1885 he spent from six to eight months out of the
year in Colorado, but after 1885 he was there only oc-
casionally, about two months at a time. He spent the first
part of the year and the summer of 1886 at Lake Forest
taking care of his father, and in October of that year ac-
companied his eldest brother, who was ill, to San Diego,
California, where he remained with his brother until June
of the following year. From that time until 1891 he

traveled back and forth between Illinois, Colorado and California. His brother having died, he transferred his residence to San Diego county, California, in 1891 in order to qualify as administrator of his brother's estate, the law of that State requiring an administrator to be a resident, and on account of the duties connected with the administration of the estate he maintained his residence there for several years. During that time he engaged in the business of buying and shipping fruit in San Diego county and operated a vineyard near Elcajon, in that county. He sold the vineyard in 1897 and moved his personal effects to the house of a friend at or near Elcajon, where he claims to have ever since maintained a room but admits that he has not occupied that room more than a week since 1904. He testified that he retained his residence in California until 1900, but that from 1895 to 1900 he was engaged in business, not only in California, but in Colorado, Minnesota, Wisconsin and Illinois, spending a portion of his time in each of those States; that he maintained an office in the city of Chicago, and during those years spent, on an average, about five months of each year at Lake Forest. In 1899 he qualified as executor of his father's will, signing a bond in which he described himself as residing in Lake county, Illinois, and acted as such executor until November, 1903. In the fall of 1900 he voted at Lake Forest and has not voted anywhere since. In 1902 he declared his residence at Duluth, Minnesota, in order to have a boat registered in his name at the United States custom house, but sold the boat in 1903 and claims to have then abandoned his residence at that place. In the spring of 1904 he accompanied a party of relatives and friends, including an unmarried sister who has since the death of their parents had charge of the Lake Forest home and with whom he has resided when in Lake Forest, to the State of California, and after traveling over the State in search of a location, finally stopped at a hotel in the city of San Diego,

where he and his sister remained for some time. Soon after arriving at San Diego he applied for and received letters of administration upon the estate of his sister-in-law, Lilly Reid Holt, who had died about nine years before. The statute of California, as above stated, does not permit a non-resident to serve as administrator of an estate. The public administrator of San Diego county soon after the appointment petitioned the court out of which the letters of administration had issued, to revoke the same, alleging that appellant was not a resident of the State. The proceedings resulted in a judgment finding that appellant was a resident of California and had not permanently removed from the State and denying the prayer of the petition. Appellant testified that he spent several months at different places in California in 1904; that in 1905 he was in the State for about two months in the fall, spending a portion of that time in San Francisco; that in 1906 he spent three or four months in California, staying in Los Angeles about a month, in San Diego about a month, in Monterey about three weeks and in San Francisco a month; that he does not know whether or not he was in California in 1907; that he spent the winter of 1907-08 in Chicago; that he left Chicago in February, 1908, and went to Europe, returning the middle of May; that he went to Canada in June and was gone until August; that he spent the time from October, 1908, to May, 1909, in Chicago, where he stayed with a married sister, and then went to Canada and remained there until August, since which time he has been living at the homestead in Lake Forest, and has been prevented since September, 1909, from going to California by litigation in which he has been involved.

Upon the death of appellant's parents, the title to the homestead at Lake Forest vested in him and his brothers and sisters, all of whom are married except appellant and one sister. It appears from appellant's testimony that the general expenses of maintaining the homestead, which ap-

pears to be a somewhat pretentious establishment, are paid by all of the heirs, but that the expenses incident to living there and conducting the household are paid by such of the heirs as actually incur those expenses; that one of the rooms in the house has since the death of his parents been assigned to appellant as his private room, and that he and his maiden sister have for several years spent a considerable portion of the time together at the homestead, sharing the living expenses between themselves. It further appears from his testimony that he is president of the Lake Forest Water Company, a resident member of two social clubs at Lake Forest, and was secretary of the Lake Forest University in 1892; that he is a resident member of the Union League Club of Chicago and of the Chicago Club at the same place; that he is the owner of the Manhattan building, a sixteen-story building on Dearborn street, in Chicago, and maintains his private offices in that building; that his name is in the Chicago directory, showing his office to be in the Manhattan building and his residence at Lake Forest, and that his name appears in the Lake Forest telephone directory as a subscriber to the Lake Forest telephone service. On the other hand, he testified that he maintained no office in San Diego county and did not even have a private desk there, his California business being left in charge of an agent at the city of San Diego; that he had no private residence or room in San Diego but stopped at the hotel when there; that he kept no room at the hotel when absent from the city, merely registering upon his arrival and checking out upon his departure, and that he belonged to no clubs in California. He was uncertain whether he claimed his residence at the city of San Diego, where he has always stayed at the hotel when in the city, or at Elcajon, fourteen miles distant, where some personal effects were stored at the house of a friend in 1897 and where he has spent in all one week since 1904, but is positive that his legal residence is in San Diego county. He pays no personal taxes in

San Diego county and pays none elsewhere, so far as the record in this case discloses. The testimony of other witnesses tends to show that appellant has been in Lake Forest a large portion of the time since 1885; that from 1901 to 1907 he spent at least seventy-five per cent of each year in Lake Forest, and was seen upon the streets of Lake Forest the same as other business men having their place of business in Chicago and their residence in Lake Forest; that he has been active in municipal affairs affecting the water-works company of which he is president; that he conducted his business in Chicago and resided in Lake Forest, traveling back and forth on the train, and, according to his own testimony, frequently purchasing and using monthly tickets between Lake Forest and Chicago; that during that period he attended church at Lake Forest seventy-five per cent of the Sundays, taking an active interest in the selection of the pastor, and was a regular attendant at the weekly prayer meeting on Wednesday night.

It seems to us apparent from a consideration of all the evidence that the house at Lake Forest, in which appellant owns an undivided interest, is, and has been for several years at least, his real home, and that he maintains no establishment at any other place, especially in California, which could be considered as such. In *Hayes* v. *Hayes,* 74 Ill. 312, it is said that, according to authoritative text-writers, the term "domicile," in its ordinary acceptation, means the place where a person lives or has his home, and that in a strict legal sense that is properly the domicile of a person where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. It is further said in the same case that in order to effect a change of domicile there must be an actual abandonment of the first domicile coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence within another jurisdiction coupled with the intention of making

the last acquired residence a permanent home. In order to bring about a change of residence it is necessary that there be not only an intention to change the residence, but the change must actually be made by abandoning the old and permanently locating in the new place of residence. (*People* v. *Estate of Moir,* 207 Ill. 180.) The intention is not necessarily determined from the statements or declarations of the party but may be inferred from the surrounding circumstances, which may entirely disprove such statements or declarations. On the question of domicile less weight will be given to the party's declaration than to his acts. (*Smith* v. *People,* 44 Ill. 16; *Kreitz* v. *Behrensmeyer,* 125 id. 141; *People* v. *Estate of Moir, supra.*) Applying these rules to the case at bar, we are of the opinion that the acts of appellant and the circumstances shown by the evidence wholly disprove his statements that he changed his place of residence to San Diego county, California, in 1904 and has ever since been a resident of that county. The judgment of the superior court of San Diego county finding that appellant was in 1904 a resident of the State of California is not *res judicata* as to that question between appellant and the taxing authorities of Lake county, and in the light of the evidence in this case cannot control the decision here upon that question.

As to the second ground upon which the injunction was sought, it appeared from the evidence that the assessment of $75,000, full value of property, was by the board of review placed under the item "all other personal property required to be listed," in the schedule which was filled out by the board, and was placed on the assessment books under the same item. Appellant insists that this is not a sufficient designation of the property assessed, and that the making of an assessment in this manner furnishes sufficient ground for interference by a court of equity by injunction restraining the collection of taxes extended thereon.

Section 25 of the Revenue act, for the purpose of assessment, divides all personal property into thirty-six classes, and requires that the schedule, when completed by the assessor, shall truly and distinctly set forth, in appropriate columns, the value of the property assessed. The board of review, in making assessments, is required to proceed as an assessor would, and to make a list of property assessed, setting down in the column opposite the separate kinds of property the assessed value thereof. (*Carney* v. *People,* 210 Ill. 434.) The thirty-sixth class under said section 25 of the Revenue act is, "all other property required to be listed." The presumption necessarily arises that the assessment by the board of review in this case was an assessment of property not included in any of the kinds of property enumerated in the first thirty-five classes. In applying to a court of equity to restrain the collection of taxes extended on this assessment, it was incumbent upon appellant to show that he did not own any property falling within the thirty-sixth class, or if he did own any such property, that the valuation thereof by the board of review was excessive and fraudulently and dishonestly made. (*New Haven Clock Co.* v. *Kochersperger,* 175 Ill. 383; *Weber* v. *Baird,* 208 id. 209.) The evidence fails to disclose any such situation, and there is therefore nothing in the record to show that appellant will be required to pay any unjust or excessive taxes, or that he will sustain any injury on account of the failure of the board of review to more particularly specify the kind or kinds of property assessed. Moreover, even though the property assessed was not as fully identified and described as the law requires, that fact alone would not furnish a sufficient ground for the issuance of an injunction. In *Williams* v. *Dutton,* 184 Ill. 608, and in *Correll* v. *Smith,* 221 id. 149, the following language from *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 id. 561, is quoted with approval: "In no event will an injunction lie unless it is clearly made

to appear that the party has been wrongfully assessed and will sustain irreparable injury unless the collection of the tax be enjoined." In *Pratt* v. *Raymond,* 188 Ill. 469, it appeared that the board of review had made an original assessment of $5000 against Pratt and had entered the same upon the assessment books without entering the full value and without specifying any items of property or values of particular kinds of property. Pratt filed his bill to enjoin the collection of the tax, one of the grounds upon which the injunction was sought being that the board of review did not enter on the assessment books the specific items of personal property which were assessed and the value of the same, and did not enter the full value but only the assessed value. The bill was dismissed, and upon appeal to this court we said, concerning the action of the board of review in making the assessment: "While the record should show the kinds of property assessed and the value thereof and the total value, the facts alleged and the objections so urged afford no ground whatever for the exercise of the limited jurisdiction of a court of equity." We consider this case decisive of the question here presented.

Appellant relies chiefly upon *Carney* v. *People, supra,* and *Weber* v. *Baird, supra,* as sustaining his contention that the action of the board of review in making the assessment in a lump sum furnishes sufficient ground for the issuance of the injunction. Neither of those cases is in conflict with the views herein expressed, but, on the contrary, both are in harmony with them.

There was no error in the action of the court in dismissing the bill for want of equity, and the decree is therefore affirmed.

*Decree affirmed.*

Mr. JUSTICE CARTER, dissenting.