## BAKER v. KECK et al.
### No. 539.

District Court, E. D. Illinois.

Feb. 3, 1936.

Thurlow Lewis, of Benton, Ill., for plaintiff.

Geo. Dowell, of Du Quoin, Ill., for defendants.

LINDLEY, District Judge.

Plaintiff has filed herein his suit against various individuals and the Progressive Miners of America charging a conspiracy, out of which grew certain events and in the course of which, it is averred, he was attacked by certain of the defendants and his arm shot off. This, it is said, resulted from a controversy between the United Mine Workers and the Progressive Miners of America.

Plaintiff avers that he is a citizen of the state of Oklahoma. Defendants filed a motion to dismiss, one ground of which is that plaintiff is not a citizen of the state of Oklahoma, but has a domicile in the state of Illinois, and that therefore there is no diversity of citizenship. To this motion plaintiff filed a response, with certain affidavits in support thereof.

Upon presentation of the motion, the court set the issue of fact arising upon the averments of the complaint, the motion to dismiss, and the response thereto for hearing. A jury was waived. Affidavits were received and parol evidence offered.

It appears that plaintiff formerly resided in Saline county, Ill., that he was not a member of United Mine Workers, but was in sympathy with their organization. The averment of the declaration is that he was attacked by members of, or sympathizers with, the Progressive Mine Workers of America. He was a farmer, owning about 100 acres of land. After his injury, he removed to the state of Oklahoma, taking with him his family and all of his household goods, except two beds and some other small items. His household furniture was carried to Oklahoma by truck, and the truckman was paid $100 for transportation. Near Ulan, Okl., he rented 20 acres and a house for $150 per year, and began occupancy thereof October, 1934. He testified that he had arrangements with another party and his own son, living with him, to cultivate the

ground, but that farming conditions were not satisfactory, and that it was impossible, therefore, to produce a crop in 1935. He produced potatoes, sweet corn, and other garden products used in the living of the family. He had no horses or other livestock in Oklahoma. He was unable to do any extensive work himself because of the loss of his arm. In the summer of 1935 he leased for the year 1936 the same 20 acres and an additional 20 acres at a rental of $150.

At the first opportunity to register as a qualified voter in Oklahoma after he went there, he complied with the statute in that respect and was duly registered. This was not until after he had been in the state for over a year, as, under the state statute, a qualified voter must have resided within the state for twelve months prior to registration. He has not voted, but he testified that the only election at which he could have voted after he registered was on a day when he had to be in Illinois to give attention to his lawsuit. He has returned to Illinois for short visits three or four times.

He testified that he moved to Oklahoma for the purpose of residing there, with the intention of making it his home and that he still intends to reside there. He testified that the family started out to see if they could find a new location in 1934. Upon cross-examination it appeared that the funds for traveling and removal had been paid by the United Mine Workers or their representative; that he left his livestock on the Illinois farm, but no chickens; that he had about 60 chickens on his farm in Oklahoma; that, when he removed to Oklahoma, he rented his Illinois farm for a period of five years; that the tenant has recently defaulted upon the same.

In the affidavits it appears that plaintiff's house in Illinois was completely destroyed by fire shortly after he left. It was not insured and was a total loss. Witnesses for the defense testified that he had told them that he intended to move back to Illinois after he got his case settled; that he had told one witness in 1935 that he was going to Oklahoma but did not know for how long. Plaintiff denies that he told these witnesses that he expected to return to Illinois as soon as his litigation was completed.

I think it is a fair conclusion from all the evidence that at the time plaintiff re-moved to Oklahoma one of his motives was to create diversity of citizenship so that he might maintain a suit in the United States courts. But that conclusion is not of itself decisive of the question presented. There remains the further question of whether there was at the time this suit was begun an intention upon his part to become a citizen of Oklahoma. One may change his citizenship for the purpose of enabling himself to maintain a suit in the federal court, but the change must be an actual legal change made with the intention of bringing about actual citizenship in the state to which the removal is made.

Citizenship and domicile are substantially synonymous. Residency and inhabitance are too often confused with the terms and have not the same significance. Citizenship implies more than residence. It carries with it the idea of identification with the state and a participation in its functions. As a citizen, one sustains social, political, and moral obligation to the state and possesses social and political rights under the Constitution and laws thereof. Harding v. Standard Oil Co. et al. (C.C.) 182 F. 421; Baldwin v. Franks, 120 U.S. 678, 7 S.Ct. 763, 32 L.Ed. 766; Scott v. Sandford, 19 How. 393, 476, 15 L.Ed. 691. Accordingly it is commonly held that the exercise of suffrage by a citizen of the United States is conclusive evidence of his citizenship. Foster on Federal Practice, vol. 1 (6th Ed.) p. 159, and cases there cited. Voting in a party primary and membership in a local political party are strong evidence of citizenship. Gaddie v. Mann (C.C.) 147 F. 955. The registration of a man as a voter and the assessment of a poll tax against him are likewise strong evidence of domicile or citizenship, though not conclusive. In re Sedgwick (D.C.) 223 F. 655. Change of domicile arises when there is a change of abode with the absence of any present intention not to reside permanently or indefinitely in the new abode. This is the holding of the Supreme Court in Gilbert v. David, 235 U.S. 561, 35 S.Ct. 164, 167, 59 L.Ed. 360, where the court said: "As Judge Story puts it in his work on 'Conflict of Laws' (7th Ed.) § 46, page 41, 'If a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicil, it is to be deemed his place of domicil, notwithstanding he may entertain a floating inten-

tion to return at some future period.' 'The requisite animus is the present intention of permanent or indefinite residence in a given place or country, or, negatively expressed, the absence of any present intention of not residing there permanently or indefinitely.' "

It will be observed that, if there is an intention to remain, even though it be for an indefinite time, but still with the intention of making the location a place of present domicile, this latter intention will control, even though the person entertains a floating intention to return at some indefinite future period. In this respect the court in Gilbert v. David, supra, further said: "Plaintiff may have had, and probably did have, some floating intention of returning to Michigan after the determination of certain litigation. * * * But, as we have seen, a floating intention of that kind was not enough to prevent the new place, under the circumstances shown, from becoming his domicil. It was his place of abode, which he had no present intention of changing; that is the essence of domicil."

In discussing a similar situation, in McHaney v. Cunningham (D.C.) 4 F.(2d) 725, 726, the court said: "He says he always intended at some indefinite future time, * * * to return to Arkansas to practice the legal profession; but, when he registered and voted in this state, he must have decided to give up that idea, for I cannot assume that he intended to commit a fraud upon its laws by claiming and exercising rights such as were given alone to a bona fide citizen. I take it, when these things were done, it was with the intention of identifying himself with the state in a political sense, which is the basis of citizenship." See, also, Reckling v. McKinstry (C.C.) 185 F. 842; Philadelphia & R. Ry. Co. v. Skerman (C.C.A.) 247 F. 269; Collins v. City of Ashland (D.C.) 112 F. 175.

In Dale v. Irwin, 78 Ill. 170 (1875), the court said, referring to a statutory provision: "The legislature, by this section, sought to establish a criterion of residence, by declaring that a permanent abode shall be such criterion. Now, what is 'a permanent abode?' Must it be held to be an abode which the party does not intend to abandon at any future time? This, it seems to us, would be a definition too stringent for a country whose people and characteristics are ever on a change. No man in active life, in this State, can say, wherever he may be placed, this is and ever shall be my permanent abode. It would be safe to say a permanent abode, in the sense of the statute, means nothing more than a domicil, a home, which the party is at liberty to leave, as interest or whim may dictate, but without any present intention to change it."

In Kreitz v. Behrensmeyer, 125 Ill. 141, 195, 17 N.E. 232, 8 Am.St.Rep. 349 (1888), the court said: "A man may acquire a domicile * * * if he be personally present in a place and select that as his home, even though he does not design to remain there always, but designs at the end of some time to remove and acquire another."

The statement of the Restatement of the Law, Conflict of Laws, § 15, Domicil of Choice, is as follows:

"(1) A domicil of choice is a domicil acquired, through the exercise of his own will, by a person who is legally capable of changing his domicil.

"(2) To acquire a domicil of choice, a person must establish a dwelling-place with the intention of making it his home.

"(3) The fact of physical presence at a dwelling-place and the intention to make it a home must concur; if they do so, even for a moment, the change of domicil takes place."

In Holt v. Hendee, 248 Ill. 288, 93 N. E. 749, 752, 21 Ann.Cas. 202, the court said: "The intention is not necessarily determined from the statements or declarations of the party but may be inferred from the surrounding circumstances, which may entirely disprove such statements or declarations. On the question of domicile less weight will be given to the party's declaration than to his acts."

Though it must be confessed that the question is far from free of doubt, I conclude that, under the facts as they appear in the record, despite the fact that one of plaintiff's motives was the establishment of citizenship so as to create jurisdiction in the federal court, there was at the time of his removal a fixed intention to become a citizen of the state of Oklahoma. He testified that he worked on a community project in that state without compensation. It appears that he registered as a voter; he thus became a participant in the political activities of the state. Such action is inconsistent with any conclusion other than that of citizenship, and, in

view of his sworn testimony that it was his intention to reside in Oklahoma and to continue to do so, it follows that the elements constituting the status of citizenship existed.

True, there is some evidence that he had said he might return to Illinois as soon as his case was settled. The language of the cases above indicates that such a floating intention is insufficient to bar citizenship, where active participation in the obligations and enjoyment of the rights of citizenship exist.

Defendants contend that the fact that the cost of plaintiff's transportation and maintenance were paid by the United Mine Workers is of decisive weight upon this issue. I cannot agree. It seems to me immaterial what motives may have inspired the United Mine Workers to help him, and the court is not now concerned with their alleged charitable and philanthropic practices.

I conclude, therefore, that plaintiff was at the time of the commencement of the suit, and is now, a citizen of the state of Oklahoma. The findings herein embraced will be adopted as findings of fact of the court and entered as such. It is ordered that the motion to dismiss because of lack of diversity of citizenship be, and the same is hereby, denied. An exception is allowed to defendants.

If possible, in view of the expense involved in a trial upon the merits, it is desirable that a review of this decision be had before such trial.