Clem Stein, Jr., et al., Plaintiffs-Appellants, v. The County Board of School Trustees of Du Page County, Robert F. Kimbell, et al., Board of Education of Downers Grove Elementary School District No. 58 and Board of Education of Downers Grove High School District No. 98, Du Page County, Illinois, Defendants-Appellees.

Gen. No. 66–153.

Second District.

July 17, 1967.

Rehearing denied and opinion modified September 15, 1967.

Ancel, Stonesifer, Glink and Levin, of Chicago, for appellants.

William V. Hopf, State's Attorney of Du Page County, of Wheaton, and Kevin P. Connelly, Assistant State's Attorney, Norman, Engelhardt, Franke & Lauritzen, of Chicago, and Alan Hultman, of Downers Grove, for appellees.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

The plaintiffs, residents of Ginger Creek community in Oak Brook, filed an action for an administrative review of the decision of the County Board of School Trustees of Du Page County, herein referred to as the "Board," which denied their petition for the detachment of territory described therein from certain school districts and its annexation to other districts.

Initially, the Board, following a hearing on the merits, granted the relief sought in the plaintiffs' petition. Thereafter, the school districts from which the territory was to be detached, filed a petition for rehearing, which challenged the authority of the Board to hear the original petition. After a hearing on the petition for rehearing on its merits, the Board reversed itself and held that it did not have jurisdiction to hear the original petition in that two-thirds of the legal voters residing in the area sought to be detached had not signed the petition, as

required by the School Code. In the aforesaid administrative review action, the trial court entered a judgment order affirming the decision of the Board and thereupon the plaintiffs appealed.

This case turns on the narrow question of whether one individual was or was not a legal voter under the relevant statutes and the tests set forth by our courts. Section 9–3 of the School Code (Ill Rev Stats 1965, c 122, par 9–3) states that a legal voter in a school election must be a "citizen of the United States, above the age of twenty-one years, must have resided in the State for one year, in the county for ninety days, in the school district . . . for thirty days immediately preceding the school election and be registered to vote in general elections from a residence located in the school district. . . ." The Election Code sets forth the requirements of those who may register to vote in general elections within this State enumerating, among other things, several residence requirements. Section 3–2 of the Code (Ill Rev Stats 1965, c 46, par 3–2) then provides: "A permanent abode is necessary to constitute a residence within the meaning" of the Code.

The narrow and single question presented by the parties is whether Nancy Kolby satisfied the "residence" requirements so as to constitute one of the legal voters of the territory sought to be detached. If so, then the plaintiffs and the other petitioners did not have the requisite two-thirds number of the legal voters residing within such territory sign their petition; if not, then the petitioners did have adequate signatures on their petition.

The petition for detachment and annexation was filed on June 9, 1965, making this the crucial date for determining who were the legal voters within the affected area. Nancy Kolby had lived with her parents in the latter's home within the area in question. On January 29, 1965, the Kolbys' home was destroyed by fire. The

family, including Nancy, moved to a hotel outside of the area in question while the home was being rebuilt. The parents at all times intended to return to their original home upon completion of the rebuilding. This work apparently was completed sometime in the fall of 1965 and the parents did, in fact, return.

Nancy, however, was engaged to James Hunt at the time her parents' home was destroyed and their wedding date was set for June 26, 1965. On or about May 10, 1965, her fiance executed a lease naming himself and Nancy Hunt as lessees. The lease was to commence June 1, 1965, and the initial rental payment was made at the time the lease was executed. Commencing around June 1, Nancy began to move her personal belongings and furniture into the new apartment from the temporary dwelling of her parents. She continued to live with her parents at the hotel, outside of the area in question, until June 26, 1965, when she was married. Thereafter, she lived in her new apartment. Her father testified that prior to her marriage she had indicated that she did not intend to return to her parents' rebuilt home—a fact which would seem indisputable under the circumstances.

It is this factual background which must be the basis for our determination of Nancy's "residence" on June 9, the date the petition was filed. At the outset, it is imperative that we elucidate what "residence" is, and is not, for the purposes of determining whether a person is a legal voter.

■ ■ In the law, "residence" has no fixed meaning but may have a variety of meanings, dependent upon the context in which it is used. Hughes v. Illinois Public Aid Commission, 2 Ill2d 374, 380, 118 NE2d 14 (1954); 25 Am Jur2d Domicil, § 4. For the purpose of determining the question of the right to vote under our statutes, the word "residence" does not mean the same thing as "domicile." Clark v. Quick, 377 Ill 424, 426, 36 NE

2d 563 (1941); Coffey v. Board of Election Com'rs of East St. Louis, 375 Ill 385, 388, 31 NE2d 588 (1941); Park v. Hood, 374 Ill 36, 44, 27 NE2d 838 (1940); Pope v. Board of Election Com'rs of East St. Louis, 370 Ill 196, 202, 18 NE2d 214 (1938); Dorsey v. Brigham, 177 Ill 250, 264, 52 NE 303 (1898). Many of the apparent inconsistencies found in the cases laboring with the question of what constitutes a person's "residence" can be attributed to the fact that some courts equate "residence" with "domicile" and apply rules of law applicable to domicile, while other courts do not. Our Supreme Court has unequivocably stated that for the purpose of our election statutes, the two words are not synonymous. Thus, in applying the legal tests for the determination of Nancy's "residence" to the factual situation before us, we are neither limited to nor bound by the legal rules applicable to the determination of her domicile.

■■■ For voting purposes, "residence" means "permanent abode." Clark v. Quick, supra, 426; Coffey v. Board of Election Com'rs of East St. Louis, supra, 387; Park v. Hood, supra, 43; Pope v. Board of Election Com'rs of East St. Louis, supra, 199, 200. In sum, "residence" is the principal dwelling place of a person—the place he considers "home." It denotes a permanency of some measure. Two elements are necessary to create a residence: (1) a physical presence in that place and (2) the intention of remaining there as a permanent home. Hughes v. Illinois Public Aid Commission, supra, 380.

■■■ If a person establishes a place as his residence, a temporary absence therefrom will not cause him to lose his residence if he at all times intended to return at some future time and never intended to permanently abandon the place as his permanent residence. The same is true if a person leaves his residence with only a conditional intention of acquiring a new residence, so long as his intention remains conditional. Park v. Hood, supra,

43; Welsh v. Shumway, 232 Ill 54, 79, 80, 83 NE 549 (1908). It is the intent of the person which is paramount in determining whether he has abandoned or changed a residence. Hughes v. Illinois Public Aid Commission, supra, 380; Bullman v. Cooper, 362 Ill 469, 476, 200 NE 173 (1936); Welsh v. Shumway, supra, 77; Kreitz v. Behrensmeyer, 125 Ill 141, 195, 17 NE 232 (1888).

■ ■ The distinction between "residence," as the word is used for election purposes, and "domicile," is crucial in this case. Domicile is a continuing thing and from the moment a person is born he must, at all times, have a domicile. Thus, one domicile may not be abandoned until another is acquired. To change domicile requires actually four elements: (1) physical abandonment of the first domicile; (2) an intent not to return to it; (3) a physical presence in a new domicile; and (4) an intent to make that his domicile. In this manner domicile is never lost.

■ The same is not true for a residence. A person need not at all times have a permanent abode. If a person physically leaves what has been his permanent abode and at any time during his absence acquires an unconditional intent not to return, it is no longer his residence. He may or may not at that time have a new permanent abode or residence. That is a distinct, separate question depending on his physical presence and intent with respect to a new residence. Thus, while a person must retain a domicile until he acquires a new one, it does not follow that the retained domicile is also that person's residence or place of abode. The two may be very different places: the latter may not even exist. Clark v. Quick, supra, 426.

■ The argument is made that if residence is looked upon in the manner we suggest, a citizen may be deprived of his right to vote. Certainly this may be

true, but we see nothing inherently evil in this. The right of a voter to express his will at the polls is not an absolute right. The legislature unquestionably has the right to prescribe reasonable conditions upon the right to vote, including conditions as to residency. Clark v. Quick, supra, 427; Pope v. Board of Election Com'rs of East St. Louis, supra, 200; 25 Am Jur2d Elections, §§ 52, 66.

The residency requirement with regard to elections serves as a protection in that it aids in the identification of voters. More importantly, it helps assure that those who are expressing their will have been in the area sufficiently long to become informed on the issues; that they intend to remain there; and that they will have an honest interest in the matter upon which a vote is being taken. These elements are of greater significance when the issue, as here, is essentially a local one.

In Pope v. Board of Election Com'rs of East St. Louis, supra, 203, the court quoted from the statement of Mr. Justice Scholfield in Kreitz v. Behrensmeyer, supra, 194, 195, in a passage that is particularly relevant here, as follows: "It can, under our system, need no elucidation, that a man cannot be entitled to vote, at any one time, in either of two places, as he shall elect; and it is, . . . pertinent to keep in mind that it does not follow because a man must have a domicile somewhere, and that a domicile once gained remains until a new one is acquired, that a man must be entitled to vote somewhere, or that the right to vote at a particular poll, being once established, is presumed to continue until the right to vote elsewhere is shown."

The question of Nancy's residence is a factual one. There is no question that she had physically abandoned her parents' home within the area in question at the time of the fire in January of 1965. Her parents also physically left their residence at that time but, beyond

doubt, they at all times intended to return there as their residence when it was rebuilt. Unquestionably, they did not abandon their established residence.

Nancy's intent is something different. Not only did she physically abandon her prior residence, but we think it unquestionable that on June 9, 1965, her intent was unconditionally and unequivocably not to return there as her place of residence. True, the world being what it is and full of uncertainties, something might have happened between June 9 and June 26 so that Nancy would not marry her fiance on that date. But so far as the question before us is concerned, the normal uncertainties of life did not make her intent, as of June 9, not to return to her parents' home as her place of residence, any less unconditional.

On June 9, Nancy and her fiance had been engaged for some time; approximately one month prior to this date, they had obtained a lease for their future home; the terms of the lease had already commenced on June 9 and Nancy had, in fact, removed some of her possessions and furniture from the temporary dwelling of her parents to her new home; her impending marriage was slightly more than two weeks away; and the rebuilding of her parents' home was obviously not close to completion as indicated by the fact that it was not reoccupied by them until the fall of the year.

██ ██ All of these facts and circumstances suggest but one conclusion as to Nancy's intent on June 9. It was that she would not return to her prior home at any future time, as her permanent dwelling or place of abode. Her father's testimony that this was her expressed intent is superfluous—the surrounding facts and circumstances suggest only one conclusion as to Nancy's intent on June 9. Declarations of a person's intent are admissible as evidence thereof, but his acts and surrounding circumstances are more persuasive in making

the factual determination of his intent. Welsh v. Shumway, supra, 77.

The factual situation at bar is perhaps somewhat unique in that it is an unusual combination of unrelated events which leads us to the conclusion we feel we must reach. Had it not been for the fire, Nancy would have remained in what had been her permanent abode through June 9; there would have been no abandonment, and the question of her qualification as a legal voter undoubtedly would not have been raised. This was followed by the circumstance of her impending marriage and the acts in preparation therefor, including the determination to establish and to enter into possession of a new permanent abode, as evidenced by the transfer of belongings and furniture thereto.

Whatever Nancy's intent might have been in January or February of 1965, it seems clear from the circumstances, that by June 9 her intent not to return to her prior residence was definite. The somewhat unusual combination of circumstances resulted in Nancy's loss of "residence" for voting purposes where normally there would not be such a loss. This, however, does not permit us to alter our conclusion, which must rest on the particular facts and circumstances of this case.

In Pope, the court on page 203 set forth the legal principles applicable to our factual situation. In holding that the establishment of domicile was not sufficient for voting purposes, the court said: "It is necessary that he show a place of residence or permanent abode for the requisite statutory period in the precinct in which he seeks to register, which he has not abandoned but which he occupies as an abode, *or to which he intends to return."* (Emphasis added.)

Nancy no longer occupied a place within the area in question as her abode. It was abandoned! The abandonment alone would not have deprived her of her residence

requirement had she intended to return, or even if her intent as to her new residence was conditional. Some time prior to June 9 she might have had an intent to return to her parents' home, or a conditional intent to do so if it were rebuilt prior to the time of her marriage. On June 9 it was obvious that this was not to be. By that date, it safely can be said that Nancy intended her abandonment of her prior residence to be permanent. Even if she at some later date were to alter that intent because of unforeseen circumstances, it would not alter her intent as of June 9 and, hence, could not alter our conclusion. Kreitz v. Behrensmeyer, supra, 195.

For the reasons stated, the judgment of the trial court affirming the orders of the County Board of School Trustees, dated November 24, 1965, and January 28, 1966, are reversed and vacated, and the cause is remanded to the Circuit Court with directions to remand the matter to the County Board of School Trustees for such action as it may deem proper with reference to ruling on the petition for rehearing, filed on July 16, 1965, by certain defendants herein, contesting the propriety of the County Board's order dated July 8, 1965, with reference to the merit of the cause; and that the trial court further direct the County Board to exclude from its consideration the jurisdictional question which this court has determined.

Reversed and remanded with directions.

ABRAHAMSON and MORAN, JJ., concur.