Alfonso Carlisi, d/b/a Al's Place, Plaintiff-Appellant, v. Illinois Liquor Control Commission, Defendant-Appellee.

**Gen. No. 52,899.**

First District, First Division.

November 10, 1969.

BURMAN, J., dissenting.

Adamowski, Newey & Riley, of Chicago (Francis X. Riley, of counsel), for appellant.

William J. Scott, Attorney General of State of Illinois, of Chicago (Francis T. Crowe and Herman R. Tavins, Assistant Attorneys General, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an administrative review action in which the Circuit Court affirmed the revocation of plaintiff's State retail liquor license by the Illinois Liquor Control Commission, on the ground that plaintiff was not a resident of the municipality in which the licensed premises were located. On appeal the determinative issue is whether the findings of the Commission were contrary to the manifest weight of the evidence presented.

Plaintiff was issued a retail liquor license effective July 1, 1967, for premises located at 3500 South Laramie Avenue, Cicero, Illinois. On October 27, 1967, the Illinois Liquor Control Commission issued a citation and notice of hearing to the plaintiff, charging him with the violation of the following provision of the Illinois Liquor Control Act (Ill Rev Stats 1965, c 43):

> "120. Persons ineligible to license.] § 2. No license of any kind issued by the State Commission or any local commission shall be issued to:
>
> > "(1) A person who is not a resident of the city, village or county in which the premises covered by the license are located; except in case of railroad or boat licenses."

After a hearing and on December 14, 1967, the Commission entered an order which included the following:

> "This Commission having heard and considered the evidence, both oral and documentary, in support of the allegations contained in said Citation and Notice of Hearing, a copy of which was duly served upon

351

the respondent licensee, at the hearing held at Chicago, Illinois, on December 12, A. D. 1967, and the respondent licensee having been represented by counsel and this Commission being fully advised, FINDS:

"That the evidence adduced at the hearing supported the charge contained in Citation and Notice of Hearing that the licensee did not in fact reside in Cicero, Illinois; whereas his application for a State Retail Liquor License states that he lived at 3500 South Laramie Avenue, Cicero, Illinois; whereas in fact, he resides at 5837 Maple, Berkeley, Illinois.

"IT IS THEREFORE ORDERED that the State Retail Liquor License No. R–11905 issued to ALFONSO CARLISI, d/b/a Al's Place, at the aforesaid address, be and the same is hereby REVOKED."

On December 28, 1967, a final order was entered by the Commission denying plaintiff's application for a rehearing.

In support of the charges the Commission's evidence included Exhibits 1, 2 and 3, which were received into evidence over the objection of plaintiff. Exhibit 1 is a certification from the Village Clerk of the Village of Berkeley, Illinois, of a 1967 vehicle license tag issued in the name of Alfonso Carlisi, with the address of 5837 Maple Avenue, Berkeley, Illinois; Exhibit 2 is a certified copy of a voter's registration card in the name of Alfonso Carlisi, the address is 5837 Maple, Berkeley, Illinois, and it is certified by the Village Clerk on October 23, 1967; Exhibit 3 is a certified copy of a water bill in the name of Alfonso Carlisi, with the address 5837 Maple Avenue, Berkeley, Illinois, and bearing dates from January 1, 1967, through September 1, 1967, and certified on October 23, 1967.

352

A witness for the Commission, an agent of the Federal Bureau of Investigation, identified the Commission's Exhibit 5, purporting to be a certified copy of an application for a 1967 automobile license in the name of Alfonso Carlisi, 5837 Maple Avenue, Berkeley, for a 1966 Chrysler. He further testified that in the course of his official duties he visited the premises at 3500 South Laramie, Cicero, on November 13, 1967. He was accompanied by a special agent of the FBI. He visited and examined the premises in the early afternoon between 1:00 and 2:00 p. m. He described the premises at length.

On cross-examination this witness stated that he had walked from the barroom portion into the banquet area about ten feet and looked around. He then walked into the interior section. This was the extent of his examination of the premises. He didn't recall whether there were kitchen facilities in the place. He also didn't recall seeing any stairway going downstairs as well as upstairs.

Another FBI agent testified that he knew plaintiff but, in attempting to identify him, identified a Mr. Tornabene as Mr. Carlisi. He had interviewed a man who identified himself as Alfonso Carlisi back in 1966.

Plaintiff was called as a witness by the Commission. He identified his application for the license and stated: "I live at 3500 South Laramie." He was familiar with the address 5837 Maple Street, Berkeley, Illinois, "because my family live there. They have lived there since we bought the place three or four years ago." He had been the licensee of the Starlight Inn in Cicero for thirteen years. At 3500 South Laramie he rents the whole first floor and has a room off the dining room in the same building.

Plaintiff further testified that for the thirteen years he had been a liquor licensee, he has "never been called before the Commission or any Board with reference to

the manner in which I have operated it." During the years 1964, 1965, 1966 and the beginning of 1967, he was residing at the Tornabene home, going to his family abode in Berkeley on Sunday morning. He would not return to the tavern at any time on Sunday. While he was the licensee at 3500 South Laramie Avenue, he resided there six nights a week. He had a room off the dining room. There was also a kitchen. He then identified photos taken of the living premises, which were admitted into evidence.

Plaintiff also offered the testimony of the following witnesses:

(1) George Sedler, a neighbor, who said that he knew plaintiff and occasionally went to the tavern for lunch and in the evening after work. He had occasion to be in the dining area. There is a stairway going down out of the dining area that leads to a bedroom. He knew that plaintiff occupied that bedroom during the months he was a patron. He had seen plaintiff going down there.

(2) Richard Beckwett, a realtor, who testified that he had been to the tavern about three times a week for the past five and one-half months. He had seen the physical layout of the premises on the first floor of the building. There is a stairway leading down to a room that contains a dresser, metal chest, bed and cabinet.

(3) Mrs. Mary Tornabene, who testified that plaintiff is her husband's first cousin, and that she knew plaintiff and his wife quite well. Plaintiff had lived in her home during 1964, 1965 and 1966 in a room upstairs.

(4) Mrs. Emily Carlisi, who testified that she was plaintiff's wife and they had been married 29 years. They have two daughters and a son. The older daughter was 28, the younger daughter 12, and the son was 23. She said that "in all the years that I have lived in Berkeley, my husband has lived with me and my son and my daughters on Sunday. He was only home on Sunday because of his business. The Starlight Tavern was

closed on Sundays. The one he has now is not closed on Sundays." She had occasion to visit the premises at 3500 South Laramie Avenue. Her husband occupies the room "at the bottom of the stairs off of the dining room. These living facilities are not very good, but they are enough for a man to get by on. He has a bed, a nightstand, I think this lamp and a rug. There are two bathrooms." On cross-examination she testified her husband came home "after he closed Saturdays which would be early [Sunday] morning." He would stay home on Sundays.

Plaintiff asserts that he was a bona fide resident in Cicero and argues that both his bodily presence and his intention of residing in the tavern as a residence were undisputed in the record, and by living on the premises he has complied with the purposes of the statute in that he is always exposed and available to the local police in Cicero.

Plaintiff contends that his "documentary and unequivocal testimony that he resided on the premises was more than sufficient to offset the Commission's case that he resided elsewhere," and that the law enforcement officials "could not disprove that he actually lived on the premises." Plaintiff states that the term "residence" has no fixed meaning in Illinois. Plaintiff cites Hughes v. Illinois Public Aid Commission, 2 Ill2d 374, 118 NE2d 14 (1954), where it is said (p 380):

> " 'Residence' has no fixed, exact meaning in the law, but may have a variety of meanings dependent upon the context in connection with which it is employed as well as the subject matter involved and the purposes of such subject matter. . . . Two elements are necessary to create a residence, (1) bodily presence in that place and (2) the intention of remaining in that place; neither alone is sufficient to create a legal 'residence.' "

And at p 381:

> "This court, as well as the legislature, has regarded 'residence' as being one's permanent home. In discussing 'residence' as used in the election laws, in Coffey v. Board of Election Com'rs, 375 Ill 385, 387, we said: 'It is established that a permanent abode is necessary to constitute a residence within the contemplation of the pertinent constitutional and statutory provisions. . . . A real and not an imaginary abode occupied as his home or dwelling, we have held, is essential to satisfy the residential qualifications prescribed by law.' "

Plaintiff also cites Stein v. County Board of School Trustees, 85 Ill App2d 251, 229 NE2d 165 (1967), and Noble v. Illinois Liquor Control Commission, 24 Ill App2d 444, 160 NE2d 688 (Abst) (1959). In Noble, the tavern owner had lived on the premises, and his wife lived in Winnetka. The licensee died and his widow was issued a license on the condition she move to the Village of Northfield, where the tavern was located. The police tried unsuccessfully to reach her in Winnetka. At one time prior to renewal of her license, she rented a room for four weeks in Northfield. The court held that "she has not established a bona fide residence in the village, but was only seeking to effect some temporary compliance with the law."

The Commission argues that "assuming the plaintiff had established that he was domiciled in Cicero, which we assert he did not, we submit that that fact alone would not establish his residence in Cicero and would not bring him within compliance with the provisions of chapter 43, section 120, subsection (1), Illinois Revised Statutes 1967. There is a difference between residency and domicile." Authorities cited include Schultz v. Chicago City Bank and Trust Co., 384 Ill 148, 51 NE2d 140

(1943) ; Auler v. Melrose, 102 F Supp 28 (1952) ; and Baker v. Keck, 13 F Supp 486 (1936).

In Schultz v. Chicago City Bank & Trust Co., the issue was whether a decedent had been domiciled at the time of his death in California or Illinois, even though he had been living in California at the time of his death. In deciding that he was domiciled in Illinois and therefore his will should be probated there, the court said (p 156) :

> "In considering appellees' contention that there was a change of decedent's domicile, we must bear in mind that residence and domicile are not synonymous and that there is a distinction between the two. . . . The domicile of a citizen may be in one State or Territory and his actual residence in another. . . . The domicile is the place where a person lives and has his true, permanent home, to which, whenever he is absent, he has an intention of returning, the question of a person's domicile being largely one of intent. . . . An essential element in the acquisition of a new domicile is the abandonment of the former one. The facts of actual removal and actual residence in the new locality without the intention there to remain avail nothing."

The Commission also cites Holt v. Hendee, 248 Ill 288, 93 NE 749 (1910), where the question of residency and domicile would determine whether the appellant, George Holt, was subject to Illinois personal property taxes. The appellant claimed that he had established a domicile and residency in California. There the court said (p 296) :

> "On the question of domicile less weight will be given to the party's declaration than to his acts. . . . Applying these rules to the case at bar, we are of the opinion that the acts of appellant and

the circumstances shown by the evidence wholly disprove his statements that he changed his place of residence to San Diego County, California, in 1904 and has ever since been a resident of that county."

The authorities cited by both sides demonstrate the difficulty of assigning a fixed meaning to the term "residence" as used in the Liquor Control Act (c 43, § 120). We think the guidelines to be used here are set forth in Fenyes v. State Employees' Retirement System, 17 Ill2d 106, 160 NE2d 810 (1959), where it is said (p 111):

"Under the Administrative Review Act, the findings of the administrative agency on questions of fact are prima facie correct. They may be reviewed to determine if they are supported by the evidence, but they can be set aside only if against the manifest weight of the evidence. Kellogg Switchboard and Supply Corp. v. Department of Revenue, 14 Ill2d 434; Logan v. Civil Service Com., 3 Ill2d 81; Drezner v. Civil Service Com., 398 Ill 219.

"The judicial function of the reviewing court in such case is comparable to that presented where such court is called upon to determine an issue at law as to whether there is competent evidence to support the judgment of the lower court, and when there is evidence to support the findings of the administrative agency, its decision will be affirmed."

■■ In sum, it was the province of the Commission to weigh the probabilities, judge the credibility of plaintiff's witnesses and determine whether their testimony was worthy of belief, or to determine whether plaintiff's evidence, if believable, was sufficient to demonstrate that he was a bona fide resident of Cicero, as examined in the light of the evidence of the Commission to the

contrary. There must be more than the existence of conflicting testimony to warrant the conclusion that a finding of fact is erroneous. In order for the decision of an administrative agency to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly evident. See Legones v. License Appeal Commission, 100 Ill App2d 394, 403, 241 NE2d 499 (1968).

■ After reviewing this record, we conclude the findings of the Commission are based on competent and substantial evidence and as an opposite conclusion to the findings of the Commission is not clearly evident, we will not substitute our judgment for that of the Liquor Commission.

For the reasons given, the judgment of the Circuit Court is affirmed.

Affirmed.

ADESKO, P. J., concurs.

BURMAN, J., dissenting:

I cannot agree with the conclusion of the majority of the court that there is sufficient evidence to support the revocation of plaintiff's retail liquor license.

Plaintiff had been a tavern licensee at 30th Place in Cicero for thirteen years before becoming a licensee of the 3500 South Laramie premises on July 1st of 1967. It is undisputed that during those years he had never been charged with any violations by the Commission.

On October 27, 1967, the Commission charged him with fraud in obtaining the 1967 license in that he stated in his application that his residence was at 3500 South Laramie Avenue, Cicero, Illinois, the address of his tavern, whereas information came to the Commission that he resides at 5837 Maple, Berkeley, Illinois.

The sole question is whether the plaintiff, licensee, resided on the licensed premises during the months of

July to November, 1967. Plaintiff testified that he resides in the 3500 South Laramie premises, but also maintains a home for his family in Berkeley, Illinois. A neighbor who has been a patron in the tavern during the months in question, testified that there is a kitchen on the premises and he had eaten there. He said there is a bedroom downstairs which plaintiff occupied. A realtor who had been a frequent patron of the tavern, testified that there is a kitchen in the premises and a bedroom downstairs in which there is a bed, a dresser, a clothes closet cabinet and a nightstand.

Emily Carlisi, plaintiff's wife, testified that her three children, two daughters and a son, reside with her at the Berkeley address, and that they have resided there for the past five years, and that her husband came home only on Sundays during those years. She stated that there were kitchen facilities in the tavern and that her daughter worked there as a cook. She testified further, that her husband occupies a bedroom in the tavern premises, has a bed, a nightstand, a lamp and a rug which she characterized as not very good, but enough for a man to get by on.

Alfonso Carlisi testified that he was fifty-four years of age and had been in the tavern business for twenty-five years. He said that he had resided in the Tornabene residence at 3641 53rd Street in Cicero during the years 1964, 1965, 1966 and the beginning of 1967, which was corroborated by Mrs. Mary Tornabene, and that he went home on Sundays. He testified that he resided six nights a week in the tavern premises at 3500 South Laramie. Photographs of a stairway going downstairs, a bed, a clothes wardrobe, a dresser in a room downstairs, were produced as exhibits.

The only person who directly testified that plaintiff did not live in the tavern premises, was an FBI agent. He testified that he examined the tavern premises on one occasion and based on that examination he

was of the opinion that there were no living quarters on the premises. On cross-examination he testified that he couldn't recall whether there were any kitchen facilities on the premises and when asked whether he made a detailed examination of what the premises actually consisted of, he replied, "no sir, I just went through."

Q. "The answer is 'no' is that right?"

A. "That's right."

In my opinion, the evidence before the Commission does not support its order and is clearly against the manifest weight of the evidence. As stated in Hughes v. Illinois Public Aid Commission, 2 Ill2d 374, 380, 118 NE2d 14. "Residence has no fixed, exact meaning in the law, but may have a variety of meanings dependent upon the context in connection with which it is employed, as well as the subject matter involved and the purposes of such subject matter. Two elements are necessary to create a residence, (1) bodily presence in that place and (2) the intention of remaining in that place; neither alone is sufficient to create a legal residence."

In evaluating the intent of the Dram Shop Act in relation to residence, the obvious and controlling consideration must be personal responsibility. To insure that responsibility, the licensee must not only be physically available, but he must be available to the local police. There was no evidence whatsoever that any police authorities or any other municipal departments had occasion to go to the tavern premises at nighttime and found that the plaintiff was not residing there. The evidence overwhelmingly shows that the plaintiff intended to personally reside in Cicero, Illinois, as his permanent residence, but he also maintained a separate home for his family in Berkeley, Illinois. See Garrison v. Garrison, 107 Ill App2d 311, 246 NE2d 9.

For the reasons indicated I am of the opinion that the judgment of the Circuit Court should be reversed.