In re A.C., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. A.C., Respondent-Appellant).

Second District   No. 2—89—0869

Opinion filed July 11, 1991.

G. Joseph Weller, and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford, and Terrence R. Lyons, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The minor, A.C., appeals from the trial court's order finding him delinquent, continuing his current term of probation, and placing him under the guardianship and custody of the Juvenile Probation Department. The issues on appeal are (1) whether a detached garage constitutes a "residence" under the criminal trespass to residence statute (Ill. Rev. Stat. 1989, ch. 38, par. 19—4); and (2) whether the State proved beyond a reasonable doubt that A.C. did not have authority to enter and sleep in the garage. We reverse.

On June 22, 1989, the State filed a juvenile petition, alleging that on June 21, 1989, A.C. committed a criminal trespass to a residence, in violation of section 19—4 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 19—4). On those dates, A.C. was serving a two-year term of probation on an unrelated juvenile charge.

The following testimony was adduced at the July 3, 1989, adjudicatory hearing. Carolyn Dahlberg testified that on June 21, 1989, at approximately 6 a.m., she discovered a boy sleeping in her garage. She phoned the police and they responded to the call. She accompanied the police to her detached garage, where they found three male youths and one adult female asleep. She saw the officers take two handcuffed youths, including A.C., out of her garage.

Dahlberg testified that she was familiar with the three males but did not recognize the female. She further testified that she did not give A.C. permission to sleep in her garage. She stated that while the garage is part of the property at 606 Kennon Road in Rockford, Illinois, the address where she lives, it is not attached to the house.

On cross-examination, Dahlberg testified that she has a 14-year-old son, Robert, who is a friend of A.C.'s. She admitted that Robert may have given A.C. permission to sleep in the garage but, if he did, it was without her knowledge or consent.

Officer Chester Epperson of the Rockford police department testified next. He was one of the officers that responded to Dahlberg's phone call reporting a person sleeping in her garage. He testified that upon arriving at the scene, he spoke with Dahlberg, who told him that she wanted the boy out of her garage. After entering the garage, he discovered four persons sleeping there. He woke them and brought them out of the garage. He asked them their names and found out that two of the four were reported runaways. He then handcuffed them to transport them to the Public Safety Building. He again spoke with Dahlberg, who informed him that she did not give her permission to anyone to sleep in her garage. On cross-examination, Officer Epperson testified that he spoke with Robert Dahlberg, who told him that he had given A.C. and others permission to sleep in the garage.

A.C. testified that on June 20, 1989, he and Robert went into the Dahlberg house. Robert asked his mother if A.C. could use the telephone. She told the two to go back outside since she was using the telephone. About 10 or 15 minutes later, the boys returned. A.C. saw Dahlberg "just sitting there." Dahlberg never objected to A.C.'s presence. He used the telephone, and then he and Robert went outside again. On cross-examination, A.C. admitted that although Robert had given him permission to sleep in the garage, Mrs. Dahlberg had not done so.

The trial court found that, since Robert knew that his mother had forbidden him to see A.C., Robert had no authority to allow A.C. onto the property; therefore, A.C. was on the property without authority. The trial court further found that the term "residence" as used in the statute includes the curtilage and therefore would include a detached garage. It found A.C. guilty of criminal trespass to a residence, found him to be delinquent, ordered him to continue his current term of probation, and placed him under the guardianship and custody of the Juvenile Probation Department. A.C. moved for reconsideration or, in the alternative, for a new trial. The trial court denied those motions, and this appeal followed.

The first issue on appeal is whether, in a prosecution for criminal trespass to a residence, the term "residence" as used in section 19—4 of the Code includes a detached garage.

Section 19—4 of the Code provides in pertinent part:

> "A person commits the offense of criminal trespass to a residence when, without authority, he knowingly enters or remains within any residence, including a house trailer. For purposes of this Section, in the case of a multi-unit residential building or complex, 'residence' shall only include the portion of the building or complex which is the actual dwelling place of any person and shall not include such places as common recreational areas or lobbies." Ill. Rev. Stat. 1989, ch. 38, par. 19—4.

The term "residence" is not defined in the Code. However, in other contexts, the word has been defined in a manner to indicate a relatively permanent habitat. See *In re R.D.H.* (1979), 68 Ill. App. 3d 299, 302 ("residence" defined for venue in juvenile proceedings under the Juvenile Court Act); *Stein v. County Board of School Trustees* (1967), 85 Ill. App. 2d 251, 256, *aff'd* (1968), 40 Ill. 2d 477 ("residence" defined for voting in school board elections).

■ We find no evidence in the plain language of the Code that section 19—4's use of the term "residence" was intended to include anything more than a relatively permanent habitat. (See *People v. Williams* (1990), 133 Ill. 2d 449, 454.) Further, we note that there was no testimony here that anyone "inhabited" the garage. The garage was unattached to the house where Dahlberg and her son lived. We find that the garage here was not a "residence" as set forth in section 19—4 of the Code.

The State argues that the General Assembly, in enacting the residential burglary statute (Ill. Rev. Stat. 1989, ch. 38, par. 19—3), employed the term "dwelling" as opposed to "residence," and by so doing intended the term "residence" to be more expansive than a "dwelling"; therefore, according to the State, the term "residence" would encompass an unattached garage. We disagree.

■ We find no such distinction between a "dwelling" and a "residence" here. The term "dwelling" is defined as an "enclosed space *** intended for *** human habitation" (Ill. Rev. Stat. 1989, ch. 38, par. 2—6), while "residence" is defined as a permanent habitat (see *In re R.D.H.*, 68 Ill. App. 3d at 302). Under either meaning, neither "dwelling" nor "residence" would include a detached building used only as a garage.

■ Our finding leads us to the conclusion that the State has not proved that A.C. was guilty beyond a reasonable doubt of criminal

trespass to a residence since it has not proved the essential element that A.C. knowingly entered or remained within a residence. (See *People v. Collins* (1985), 106 Ill. 2d 237, 261.) We need not address A.C.'s other contention on appeal.

The decision of the circuit court of Winnebago County is reversed.

Reversed.

McLAREN and NICKELS, JJ., concur.