(No. 33003.—

Florence Hughes, Appellee, *vs.* Illinois Public Aid Commission, Appellant.

*Opinion filed March 17, 1954.*

Latham Castle, Attorney General, and John L. Davidson, Jr., both of Springfield, (William C. Wines, Raymond S. Sarnow, and A. Zola Groves, of counsel,) for appellant.

Luther D. Swanstrom, of Chicago, for appellee.

Mr. Justice Maxwell delivered the opinion of the court:

The Illinois Public Aid Commission, after a hearing as provided by statute, found that the appellee, Florence Hughes, a recipient of old age assistance, had abandoned her Illinois residence and ordered her assistance discontinued. On review the circuit court of Cook County found that appellee had not abandoned her Illinois residence, set aside the order of the commission and ordered appellee reinstated. The commission appeals from that order.

The sole question presented is whether the evidence introduced before the hearing officer of the commission shows that appellee has abandoned or retains her Illinois residence for the purpose of the Public Assistance Code.

The objective facts, as disclosed in that evidence, are not in dispute and may be fairly summarized as follows: Appellee qualified for assistance under the act as a resident of the city of Chicago in May, 1944, and received monthly assistance checks until she was declared ineligible by the commission in November, 1951. Appellee's husband died in June, 1947, and she thereafter resided in a rented room furnished with her belongings. She owned no real estate. In 1949 appellee advised the commission, through its representatives, that she wanted to move to California where her sister resided but she wanted assurance that she would remain eligible for her pension until she had resided in that State long enough to qualify for old age assistance there, a period of five years. Her consultations with the commission's representatives culminated in the commission procuring an opinion from the Attorney General and advising her, in December, 1949, that she might move to California with the intention of remaining in that State and that as long as need existed she would continue to receive assistance from Illinois. She was further advised, in this same communication, that a change in the regulations regarding out-of-State residence could be made at any time by legislative action and that the commission could not guarantee her that she would receive her pension for five years. Relying upon this assurance appellee moved to California in January, 1950. In June, 1950, the commission promulgated its resolution in Bulletin 50.18 declaring that 12 months absence from the State shall be *prima facie* evidence of intention to relinquish an Illinois residence for the purposes of the Public Assistance Code. Appellee was immediately notified by letter that her grant would be discontinued. Appellee then contacted her brother, a Mr. Raymond, who resided in Chicago, and he telephoned the Chicago office of the commission advising them that his sister did not intend to abandon her Illinois residence. On this information appellee's grant was resumed. In August,

1950, appellee was again advised of the commission's new out-of-State policy and was sent a questionnaire which she returned the following month. In an accompanying letter she stated she had not returned to Illinois because she was waiting to hear if her old age pension would continue until she was eligible for assistance in California. She stated in this letter that it was her understanding when she moved from Chicago that "I was going to reside in California permanently and would receive my pension from Illinois until I had been a resident of California for five years and eligible for pension here."

In December, 1950, the commission notified appellee, by letter, that if she did not return to Illinois in January, 1951, her assistance would be discontinued. Again at the request of appellee's brother, upon representation that she was ill and under a doctor's care, the date for her return was extended to June, 1951. In May of that year appellee returned another questionnaire and in an accompanying letter she stated, "Owing to illness my doctor advises me to remain in California as the climate and chiropathic treatment has been a great help. On account of my heart condition cannot live in cold climate. * * * Therefore, I would like to remain until such time as condition would permit a move." By letter dated June 21 appellee's physician advised the Chicago office of the commission that she had been receiving medical attention but that in his opinion she was able to travel. The commission had previously received two letters from a chiropractor advising that appellee was receiving treatments from him, that she would have to continue such treatments for a long time, and that it was not advisable for her to return to Chicago. On June 28 appellee's brother assured a representative of the commission that she would return to Chicago in September, 1951, and the requirement that she return was extended to that time. She failed to return in September, and on October 26 she was advised that the Illinois Public Aid

Commission had released her October warrant but she would no longer be eligible unless she resumed her residence in Illinois. On April 3, 1952, appellee's brother requested her reinstatement, formal application therefor was filed May 7, 1952, and was denied by the county department and affirmed by the commission in August, 1952. On August 29 this complaint for judicial review by the circuit court was filed.

The circuit court, in review of the decision of the commission, found that the question of residence was purely one of intention, that the evidence showed appellee intended to keep her residence in Illinois until she had qualified for relief in the State of California, and the order of the commission was reversed and appellee was ordered restored to the pension rolls.

Subsequent to the judgment of the circuit court, and while this appeal was being perfected, the legislature adopted an amendment to the Public Assistance Code, effective July 15, 1953, which provides:

"A recipient of assistance or general assistance who has remained outside the State for a continuous period of 12 months shall prima facie be presumed to have lost his residence and shall receive no further assistance or general assistance unless and until he submits evidence sufficient to prove that he has retained such residence." Ill. Rev. Stat. 1953, chap. 23, par. 436-10; Jones Ann. Stat. 18.201-10.

Where no vested rights are involved this court must decide the issues on the law as it stands at the time of our decision and not as of the time the cause of action accrued or the time of the trial court's decision. (*Peoples Store of Roseland v. McKibbin,* 379 Ill. 148.) We have held several times that there are no vested rights in a gratuitous pension granted by the State where such pension is not granted in contractual requital and as consideration for services rendered or some other valuable consideration. (*Keegan v. Board of Trustees,* 412 Ill.

430; *Dodge* v. *Board of Education,* 364 Ill. 547, affirmed 302 U.S. 74; *Stiles* v. *Board of Trustees,* 281 Ill. 636.) Our decision must therefore consider and apply the 1953 amendment.

The appellee contends that the State is in some manner bound or estopped by the representations made to her by the administrative personnel of the Department or by the opinion of the Attorney General upon which she relied when she moved from Illinois. That contention cannot be considered regardless of how unfortunate it is if appellee was misled by those representations. The State cannot be bound by the representations of its employees if the law is to prevail over the opinions or judgment of such employees. (*People ex rel. Barrett* v. *Crowe,* 387 Ill. 53; *Massell* v. *Daley,* 404 Ill. 479.) Furthermore, the representations made to appellee, and the opinion of the Attorney General, were all contingent upon any change in the law by legislative action, a contingency which has occurred and which we must here take into account. Other than as a circumstance to be considered in determining appellee's intention when she moved from Illinois, those representations are immaterial.

The question for our determination here is not what is or was the appellee's intention in regard to her Illinois residence, that is abundantly clear and expressly stated by appellee; the real issue is what is the effect of appellee's intentions upon the retention or abandonment of her Illinois residence under the provisions of the act.

There is no room for doubt, under the evidence and appellee's statements, that she moved to California with the intention of residing there permanently and establishing a residence there which would ripen into a five-year residence in that State to qualify her for assistance there. It is equally clear that she wanted to cling to her status as a qualified resident of this State until she had established her qualifications in California. Necessarily, her present intention

would be to abandon her Illinois residence at that time. Our specific question then becomes whether appellee's departure from Illinois and her residing outside this State for a continuous period of 12 months, with such a plan and its attendant intentions, constitutes a retention or an abandonment of the residence qualification required by the Public Assistance Code.

"Residence" has no fixed, exact meaning in the law, but may have a variety of meanings dependent upon the context in connection with which it is employed as well as the subject matter involved and the purposes of such subject matter. (77 C.J.S. 290.) Two elements are necessary to create a residence, (1) bodily presence in that place and (2) the intention of remaining in that place; neither alone is sufficient to create a legal "residence." When a legal residence is established, a temporary departure therefrom with intention to retain that residence and to return to it is not an abandonment or forfeiture of that "residence." (*Park v. Hood,* 374 Ill. 36.) In such cases the courts usually say the controlling element in determining if "residence" has been lost or retained is the person's intention. (*Coffey v. Board of Election Comrs.* 375 Ill. 385.) The intention, however, must be a *bona fide* intention to return at some time and make that place a permanent home.

"Residence" for specific purposes is also subject to legislative definition. A "resident" for the purposes of the Public Assistance Code of 1949, has been defined by our legislature as being one who has "made his or her permanent home in this State for a continuous period of one year." (Ill. Rev. Stat. 1953, chap. 23, par. 436-10(a).) Subparagraph (b) provides such residence shall continue until such person has acquired a new residence outside this State. It is clear from this definition that "residence" as required in this act is inextricably connected with "permanent home." In *Park v. Hood,* 374 Ill. 36, we said "residence" and "permanent abode" as used in the election laws

were synonymous. Such permanency, however, does not mean a fixity for all time, as shown by subparagraph (b). It means rather a present intention of permanency and the lack of a present contrary intention.

This court, as well as the legislature, has regarded "residence" as being one's permanent home. In discussing "residence" as used in the election laws, in *Coffey* v. *Board of Election Comrs.*, 375 Ill. 385, 387, we said: "It is established that a permanent abode is necessary to constitute a residence within the contemplation of the pertinent constitutional and statutory provisions. (*Pope* v. *Board of Election Comrs.* 370 Ill. 196.) A real and not an imaginary abode occupied as his home or dwelling, we have held, is essential to satisfy the residential qualifications prescribed by law."

Applying the foregoing principles and provisions of our statute to the evidence in the instant case we must conclude that the appellee has not submitted evidence sufficient to prove that she has retained her residence in Illinois. If nothing more than one's intention were required the legislature could have provided merely for a statement from the recipient rather than to provide for the submission of "evidence sufficient to prove that he has retained such residence." We do not believe the legislature regarded retention of residence in this State by one living outside the state as purely a matter of choice to fit the exigencies of the recipient's situation or as a matter of convenience to retain legal benefits. We do not believe one can have a plan or design to permanently reside in one State and a *bona fide* intention to retain residence in another State. The underlying and basic factor in retention of a domicile or residence in a certain place while residing in another place is one's desire or wish to regard the original place of residence as his home and intend to return at some time and permanently reside there, regarding his residence elsewhere as temporary.

The evidence here shows conclusively that appellee planned to make California her permanent home. She moved there and established a residence there for the express purpose of qualifying for assistance in that State. She could not establish a permanent residence in California to qualify for assistance there without abandoning her permanent residence in Illinois. She could not have a permanent residence in both States and be eligible for assistance from both. She has persisted in remaining in California and has failed to return to resume her residence in Illinois, which fortifies the conclusion that she moved from Illinois with the intention of establishing her permanent home in California.

Under these circumstances it is our opinion that appellee abandoned her residence in Illinois in January, 1950, when she moved outside the State to establish a new permanent residence, and she is not qualified for assistance as a resident of this State.

The judgment of the circuit court of Cook County reinstating appellee to the old age assistance rolls is reversed.

*Judgment reversed.*