HERBERT RAPRAGER *et al.*, Plaintiffs-Appellants, v. ALLSTATE IN-
SURANCE COMPANY, Defendant-Appellee.

Second District   No. 2—88—0949

Opinion filed May 19, 1989.—Rehearing denied June 30, 1989.

Peter T. Sullivan III, of Sreenan, Cain & Sullivan, P.C., of Rockford, for appellants.

Mark E. Condon and Francis J. Leyhane, both of Condon, Cook & Roche, of Chicago (Paul S. Festenstein, of counsel), for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiffs, Herbert and Margo Raprager, appeal from judgments of the circuit court of Winnebago County entered in favor of the defendant, Allstate Insurance Company. The plaintiffs filed a three-count complaint against Allstate after it denied them recovery under their insurance policy after a fire in their home in Machesney Park, Illinois, on March 16, 1985. The plaintiffs' son, Todd Raprager, who was 17 at the time of the fire, entered a negotiated plea of guilty to arson of the house. Todd admitted he removed a plug from a natural gas line in the basement of the house during the very early morning hours of March 16. He then left the house. Sometime later that morning, the house exploded and burned. Plaintiffs and their other son, Justin, who were all sleeping at the time of the explosion, escaped injury. Todd's written statement to the police described problems in his relationship with his mother and father as his motive for the arson.

Count I stated a cause of action for breach of contract, count II a claim for attorney fees pursuant to section 155 of the Illinois Insurance Code (the Code) (Ill. Rev. Stat. 1985, ch. 73, par. 767), and count III a cause of action in tort for compensatory and punitive damages caused by Allstate's intentional refusal to deal fairly and act in good faith.

Allstate's motion to dismiss count III for failure to state a cause of action (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) was granted. Its answer to counts I and II raised five affirmative defenses, and the plaintiffs' motion to strike these affirmative defenses and subsequent motion to reconsider were denied. The plaintiffs filed general denials to these defenses. Allstate thereafter filed a motion for summary judgment which alleged there was no genuine issue of material fact with respect to any of the allegations of counts I and II and its first affirmative defense. After argument on the summary judgment motion and plaintiffs' second motion to strike the affirmative defenses, plaintiffs' motion to strike was denied, and Allstate's motion for summary judgment was granted.

The plaintiffs raise three issues on appeal: (1) whether the court erred in denying their motion to strike Allstate's affirmative defenses; (2) whether the court erred in granting Allstate summary judgment; and (3) whether the court erred in dismissing count III.

### MOTION TO STRIKE AFFIRMATIVE DEFENSES

Inasmuch as Allstate's motion for summary judgment was grounded on its first affirmative defense, we consider first the plaintiffs' contention the court erred by not striking it.

Plaintiffs' contract with Allstate is comprised of four components: (1) two pages of declarations; (2) a standard one-page 165-line fire policy (standard fire policy); (3) a cover page for the standard fire policy (cover page); and (4) a three-section "Deluxe Homeowners Insurance Policy" (homeowners' policy).

The declarations pages show Herbert A. and Margo A. Raprager listed under "Name of Insured."

The standard fire policy cover page provides in pertinent part:

"This form contains the provisions of the Standard Fire Policy. *Whenever the terms and provisions of Section I can be construed to perform a liberalization of the provisions found in the Standard Fire Policy, the terms and provisions of Section I shall apply.* [Emphasis added.]

In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declara-

tions *** Allstate *** does insure the Insured named in the Declarations and legal representatives, *** against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described herein while located or contained as described in this policy ***. [Capitalization in original.]

* * *

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy."

The 165-line standard fire policy provides in pertinent part:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

* * *

This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: *** neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is in endangered by fire in neighboring premises.

* * *

Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured."

The general section of the homeowners' policy provides definitions of "you" or "your" and "insured person":

" *'You'* or *'your'*—means the person named on the declarations page as the insured and that person's resident spouse.

* * *

*'Insured person'*—means *you* and, if a resident of *your* household:

(a) any relative; and

(b) any dependent person in *your* care.

\* \* \*

The terms of this policy impose joint obligations on the person named on the declarations page as the Insured and that person's resident spouse. These persons are defined as *you* or *your*. This means that the responsibilities, acts and failures to act of a person defined as *you* or *your* will be binding upon another person defined as *you* or *your*.

The terms of this policy imposed joint obligations on persons defined as an *insured person*. This means that the responsibilities, acts and failures to act of a person defined as an *insured person* will be binding upon another person defined as an *insured person*.

\* \* \*

This policy is void if *you* intentionally conceal or misrepresent any material fact or circumstance, before or after loss. We do not cover any other *insured person* who has concealed or misrepresented any material fact or circumstance, before or after a loss." (Emphasis in original.)

Section I of the homeowners' policy provides in part:

"Losses We Do Not Cover:

\* \* \*

4. Neglect by an *insured person* to take all reasonable steps to save and preserve property at and after a loss or when the property is endangered by a loss we cover.

5. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an *insured person*.

6. Intentional or criminal acts of an *insured person,* if the loss that occurs:

(a) may be reasonably expected to result from such acts; or

(b) is in fact the intended result of such acts.

This exclusion does not apply with respect to the interest of mortgagees not participating in these acts." (Emphasis in original.)

Allstate's first affirmative defense was that Todd Raprager was an "insured person" as defined in the general section of the policy and that Todd Raprager started and caused the fire in question; that the loss which occurred was reasonably expected to result from his actions or was in fact the intended result of his actions; and that, inasmuch as the policy imposes joint obligations on persons defined as

an "insured person," neither Herbert nor Margo Raprager, named in the policy as insureds and, thus, included in the definition of "insured person," was entitled to sue on the subject policy for the fire of March 16, 1985.

Plaintiffs argue the court erred when it refused to strike this affirmative defense because (1) the policy, viewed in its entirety, cannot be read so as to deny them coverage based upon the actions of their son and (2) that to so interpret the policy would be against public policy. Plaintiffs' argument focuses on the fact the exclusions provided in the standard fire policy refer to the conduct of "the insured," as opposed to the exclusions in section I of the homeowners' policy, which refer to the acts of an "insured person." Plaintiffs posit that the definitions and joint obligations language of the general section of the homeowners' policy can only be read as a prelude to the homeowners' policy and not to the standard fire policy since to do so would render the term "the insured" in the standard fire policy meaningless and surplusage. Plaintiffs further argue the section I exclusion for intentional or criminal acts of an insured person cannot be applied to defeat recovery under the standard fire policy since that exclusion cannot be construed as performing a "liberalization" of the standard fire policy provisions.

Plaintiffs rely on cases (one of which, *American States Insurance Co. v. White* (1950), 341 Ill. App. 422, is an abstract opinion) which stand for the general proposition that meaning and effect should be given to every part of a contract, including all its terms and provisions (*Home & Automobile Insurance Co. v. Scharli* (1973), 10 Ill. App. 3d 133), and that where an ambiguity exists, a contract of insurance will be construed most strongly against the insurer (*Webster v. Inland Supply Co.* (1936), 287 Ill. App. 567, 574; *Joseph v. New York Life Insurance Co.* (1923), 308 Ill. 93, 97). The ambiguity identified by the plaintiffs here is the fact that the standard fire policy creates exclusions based only on the conduct of the insured whereas the homeowners' policy creates exclusions based on the conduct of the insured *and others* by virtue of the definition of "insured person." Plaintiffs conclude that without the application of the section I exclusions, Allstate would not prevail on its first affirmative defense and the court erred by not striking it.

In response, Allstate contends this court must accept as true all facts well pleaded together with all reasonable inferences which can be drawn from those facts in determining the legal sufficiency of its affirmative defense. Viewed thusly, Allstate contends its first affirmative defense sufficiently set forth facts which, if proved, would have

defeated plaintiffs' claim.

■■ An "affirmative defense" is one in which the defendant gives color to his opponent's claim but asserts new matter which defeats an apparent right in the plaintiff. (*Federated Equipment & Supply Co. v. Miro Mold & Duplicating Corp.* (1988), 166 Ill. App. 3d 670; *Doherty v. Kill* (1986), 140 Ill. App. 3d 158.) A motion to strike an affirmative defense admits all well-pleaded facts constituting the defense (*Vermeil v. Jefferson Trust & Savings Bank* (1988), 176 Ill. App. 3d 556), together with all reasonable inferences which may be drawn therefrom (*Farmer City State Bank v. Guingrich* (1985), 139 Ill. App. 3d 416), and raises only a question of law as to the sufficiency of the pleading (*Vermeil*, 176 Ill. App. 3d at 566). A motion to strike does not admit as true, however, those allegations which conflict with the facts disclosed in an exhibit. (*McCormick v. McCormick* (1983), 118 Ill. App. 3d 455, 460.) No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet. (Ill. Rev. Stat. 1985, ch. 110, par. 2—612(b); *In re Estate of Schwebel* (1985), 133 Ill. App. 3d 777.) Where the well-pleaded facts and inferences drawn therefrom raise a possibility that the party asserting the defense will prevail, striking of the affirmative defense is improper. *Guingrich*, 139 Ill. App. 3d at 422.

■■ ■ In an action to recover on an insurance policy, the burden is on the insurer to plead and prove as an affirmative defense that a loss otherwise covered falls within the scope of an exclusion in a policy. (*Wahls v. Aetna Life Insurance Co.* (1983), 122 Ill. App. 3d 309; *Hildebrand v. Franklin Life Insurance Co.* (1983), 118 Ill. App. 3d 861, 867.) The exclusions pleaded by Allstate in its first affirmative defense are found in section I of the homeowners' policy. The standard fire policy provides that "[w]henever the terms and provisions of Section I can be construed to perform a liberalization of the provisions found in the Standard Fire Policy, the terms and provisions of Section I shall apply." Allstate has not alleged part of its affirmative defense that the section I exclusions perform "a liberalization" of the provisions of the standard fire policy, nor has Allstate addressed plaintiffs' argument in this regard except to argue the section I exclusions are not "inconsistent" with the standard fire policy provisions. The concealment, fraud, suspension, restriction and exclusion provisions set forth in the standard fire policy use the term "the insured," however, not "insured person" as in section I, and the standard fire policy provides no express exclusion for intentional or criminal acts as provided in section I.

Accordingly, we conclude Allstate's first affirmative defense does not raise a possibility that it will prevail, and the court erred by not striking it.

Inasmuch as we conclude below that the court erred in granting summary judgment to Allstate and that the cause should be remanded, we proceed to consider plaintiffs' further contention that the court erred in not striking Allstate's second through fifth affirmative defenses.

■ Allstate's second affirmative defense was that plaintiffs and Todd Raprager are "insured persons" as defined in the general section of the homeowners' policy; that plaintiffs and Todd Raprager, acting either individually or in concert, started the subject fire; and the loss which followed was a reasonably expected result or was in fact the intended result, thus triggering the exclusions contained in section I of the homeowners' policy.

For the same reasons we have assigned above with regard to Allstate's first affirmative defense, we conclude the court erred in not striking Allstate's second affirmative defense as well. Allstate has not alleged as part of its affirmative defense that the section I exclusions relied upon may be construed to perform a liberalization of the standard fire policy provisions.

■ Allstate's third affirmative defense was that the plaintiffs, in submitting their sworn statement of proof of loss, made material misrepresentations as to the cause and origin of the fire, their knowledge of same, the amount of the loss claimed and other matters material and pertinent to the loss claimed, and that this conduct on the part of plaintiffs rendered the policy void as provided in the concealment or fraud provisions of the general section of the homeowners' policy. Allstate's fourth and fifth affirmative defenses alleged that Herbert and Margo Raprager, respectively, during the course of their examinations under oath, made material representations of fact as to the cause and origin of the fire, his or her knowledge as to the same, his or her financial condition, the amount of the loss and/or the value of property allegedly destroyed by the fire.

Plaintiffs' motion to strike Allstate's third, fourth and fifth defenses alleged that they had been waived where Allstate's letter to them rejecting their claim failed to include these grounds as a basis for the rejection.

In pertinent part, it was stated in Allstate's rejection letter to the plaintiffs:

"This denial of liability is predicated on, among other reasons, breach of the terms and conditions of your policy pertaining to

neglect by an insured person to take all reasonable steps to save and preserve property at and after a loss or when the property is endangered by a loss we cover; any substantial change or increase in hazard if changed or increased by means within the control or knowledge of an insured person; intentional or criminal acts of an insured person; and concealment or fraud, all found on pages 6 and 7 of Form AU9601 [the homeowners' policy] and within the standard 165 lines of your [standard fire] policy."

Allstate's letter clearly included among the bases for its rejection of the plaintiffs' claim the policy provisions relied upon by it as the bases for its third, fourth and fifth affirmative defenses. Accordingly, since these affirmative defenses raise the possibility that Allstate would prevail, the court did not err in not striking them. *Guingrich*, 139 Ill. App. 3d at 422.

### SUMMARY JUDGMENT

Allstate's motion for summary judgment on counts I and II was predicated on its first affirmative defense, to wit, that Todd Raprager was an "insured person" and, as such, plaintiffs, insured persons jointly liable for the acts of other insured persons, could not recover for a loss caused or intended by Todd's criminal act of arson as provided in the section I exclusions of the homeowners' policy. The trial court found no genuine issue of material fact existed with respect to any of the allegations of that affirmative defense, and it granted Allstate summary judgment. In addition to the arguments they present above in connection with Allstate's first affirmative defense, plaintiffs contend summary judgment also should not have been granted where there was a genuine issue of material fact as to whether Todd was "a resident of [plaintiffs'] household" and, thus, within the definition of "an insured person." They point to the affidavit of Herbert Raprager, offered in support of their brief in opposition to Allstate's motion for summary judgment, which indicated "clearly it was not Todd's intent to be a resident of the household."

Allstate's one-page motion for summary judgment incorporated therein its brief in support of the motion and all exhibits attached thereto or previously filed with the clerk of the court. The supporting documents included the four-part insurance policy; the sworn statements of Herbert and Margo Raprager; a certified copy of the information charging Todd Raprager with arson; a copy of the court's letter of opinion stating that if Allstate proved the allegations of its first affirmative defense, the plaintiffs would not be entitled to recover; a

copy of the court's order denying the plaintiffs' motion to strike defendant's first affirmative defense; a certified copy of Todd Raprager's jury waiver; a copy of the report of proceedings of Todd Raprager's guilty-plea hearing; and the discovery deposition of Herbert Raprager.

According to the plaintiffs' sworn statements, they lived in the home from March 1972 until the fire in March 1985. Todd Raprager was dependent upon them for support in March 1985 and was living with them at the insured premises at 8724 Wakefield, Machesney Park, Illinois, continuously for two weeks prior to the fire on March 16, 1985. Todd Raprager attended school from the insured premises on the day before the fire and had dinner there the evening before the fire. Prior to March 1985, Todd Raprager had run away from the residence on two occasions. According to Herbert Raprager's sworn statement, Todd ran away once in January 1985 for between 7 and 10 days and again in February 1985 for two weeks. According to Margo Raprager's sworn statement, Todd was gone for about a week the first time he ran away in January and for about three or four weeks the second time he ran away in February. She stated Todd did not like the "house rules" about his having to be home at midnight and he did not want to say where he was going and when he would be back. Plaintiffs reported Todd's second runaway incident to the police but not the first. The police picked Todd up at school and brought him home "for a chat." After the fire and before he entered Swedish American Hospital two weeks later, Todd lived with the plaintiffs at Margo Raprager's mother's residence. Todd did not live with the plaintiffs after he left Swedish American Hospital. Todd's written statement to the police concerning the incident showed his address as "8724 Wakefield Drive," and the factual basis offered in support of Todd Raprager's guilty plea began with the statement that, "[O]n March 16, 1985 *** Todd Raprager, was living at 8724 Wakefield in Machesney Park *** with his parents Herbert and Margo Raprager and also with his brother, Justin."

The plaintiffs' brief in opposition to Allstate's motion for summary judgment alleged Todd Raprager was not legally a "resident" of the insured premises on March 16, 1985. In support of their motion, plaintiffs attached the affidavit of Herbert Raprager which reads:

"I, HERBERT RAPRAGER, under oath, state as follows:

1. That Todd Raprager was not a legal resident of my household on Wakefield Drive on March 16, 1985.

2. That the basis for the statement in paragraph one is that Todd Raprager previously moved out of said dwelling for signif-

icant periods of time, including one time for a period in excess of one month.

3. That prior to March 16, 1985, Todd Raprager had removed nearly all his clothing and small personal effects such as, yearbooks and photographs, and moved to a home with a Trisha Mueller [sic], resided and engaged in a conjugal relationship with said Trisha Mueller [sic], for a period of time in excess of one month.

4. That my wife and I informed the Secretary of State, for the State of Illinois, prior to March 16, 1985, that we were revoking our parental consent for Todd Raprager's Driver's License due to the fact that he was not a resident of our household and, therefore, we were not responsible for his actions, and a true and correct copy of an Order of cancellation dated March 1, 1985, of said license is attached hereto.

5. That Todd Raprager, although he had slept at our residence for a short period of time prior to the fire in question, had, in addition, indicated his intent not to be a resident of said household by constantly informing me and my wife that, in fact, he had no intent of being a resident and that he was going to do anything he could so that he would not have to sleep at said house and that he was going to move out of said house and, in fact, on several occasions moved out of said house and, in fact, informed us that he wished to stay with said Trisha Mueller [sic].

6. That subsequent to the fire in question Todd never slept in the same house with myself and my wife and he always expressed the same intent he had prior to the fire, namely, to reside in a residence other than that of myself and my wife.

Further Affiant sayeth not."

Attached to the affidavit was a copy of an order of cancellation from the Secretary of State's office cancelling Todd's driver's license because consent for his application had been withdrawn. We note the court refused to consider the discovery deposition of Trisha Moeller, n/k/a Trisha Aurand, and never ruled on plaintiffs' post-summary judgment motion for leave to file that deposition. Consequently, Aurand's deposition is not properly a part of this record.

Allstate argues Raprager's affidavit is insufficient to create a genuine issue of material fact since he previously testified under oath contrary to the allegations set forth therein. Such subsequent counteraffidavits have been found not to create a genuine issue of material fact. *Doherty v. National Casting Division, Midland-Ross Corp.*

(1972), 6 Ill. App. 3d 329; *Burnley v. Moore* (1963), 41 Ill. App. 2d 156.

Plaintiffs correctly note that two elements are necessary to create a legal residence:

> "(1) Bodily presence in that place and (2) the intention of remaining in that place; neither alone is sufficient to create a legal 'residence.' " (*Hughes v. Illinois Public Aid Comm'n* (1954), 2 Ill. 2d 374, 380.)

A person can have only one domicile or permanent residence, and once it is established, it is retained until a new domicile is acquired. (*Hatcher v. Anders* (1983), 117 Ill. App. 3d 236.) A temporary departure from a residence with the intention to return to it is not an abandonment or forfeiture of the residence. (*Hughes*, 2 Ill. 2d at 380.) "To establish a new domicile, a person must physically go to a new home and live there with the intention of making it his permanent home." (*Hatcher*, 117 Ill. App. 3d at 239.) "[T]he controlling element in determining if 'residence' has been lost or retained is the person's intention" (*Hughes*, 2 Ill. 2d at 380), and summary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions (*State Farm Mutual Automobile Insurance Co. v. Short* (1970), 125 Ill. App. 2d 97, 106).

The court here was not required to draw any inferences of fact as to Todd's intention with respect to his residency, inasmuch as the record as a whole supports its conclusion that Todd was a resident of the insured premises. Although Todd Raprager was not deposed in the course of these proceedings, his written sworn statement to the police appended to Herbert Raprager's deposition, considered in the context of the entire record, shows he was a resident of plaintiffs' household. In his statement, Todd described the problems he had with his parents and the fact he had run away in January. He stated further:

> "I did try to set up a meeting with my school counselor and my parents to work out this problem betw-en [*sic*] us but I was to blame for everything and I was the only one that had to change not them. My car and driving privlages [*sic*] were taken away and [I was] told all my clothes and things were to stayat [*sic*] home and not go with me. I told them fine and [I] didn't need them. I left and she didn't think that I would because my car and things important were taken away. I just could not handle the things she was doing to me. I had the things that I needed and places to go to stay. I left because we were not getting

along and could go other places and still get along with out the hassell [*sic*]. She told me that she would not pay for my college education and I said that if I couldn't pay for it myself I did not need it. *I went back later* and was told it would be like nothing never [*sic*] happened except I did not have my drivers [*sic*] license. I *wnnt* [*sic*] *back because I hopped* [*sic*] *that things would get better*. Things were ok for a couple of days but things went back to the same old routeen [*sic*], nagging and yelling at me. I tried everything that I could so I thought I would try my scare tacktic [*sic*] or whatever you want to call it." (Emphasis added.)

The remainder of Todd's statement describes the formulation and implementation of his plan to scare his mother by removing the plug from the gas line in the basement. Based on Todd's statement, we believe the court properly concluded there was no genuine issue of material fact with regard to his residency.

■ Nevertheless, we believe the court erred in granting Allstate summary judgment because it was not entitled to judgment as a matter of law. It is well established that summary judgment is proper when the pleadings, depositions, and other documents on file present no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005; *Hapaniewski v. Rustin* (1989), 179 Ill. App. 3d 951.) As discussed above, Allstate failed to plead as part of its affirmative defense the section I exclusion it relied on to deny plaintiffs' coverage was applicable to the standard fire policy, and it was Allstate's burden to plead and prove that plaintiffs' loss fell within the scope of an exclusion therein.

Accordingly, we conclude summary judgment was improper, and the cause should be remanded.

### DISMISSAL OF COUNT III

■ Plaintiffs contend the court erred when it dismissed count III with prejudice. In addition to the allegations of count I, count III alleged Allstate had a duty to deal fairly and act in good faith with plaintiffs by virtue of the parties' insurance contract; that Allstate, knowing of its liability under the insurance policy and the damages that would be caused plaintiffs, refused to deal fairly and act in good faith with plaintiffs during the disposition of the claim; and that the plaintiffs were damaged thereby. Plaintiffs prayed for compensatory and punitive damages.

Plaintiffs concede their claim for punitive damages no longer is a

viable one under the authority of *Kohlmeier v. Shelter Insurance Co.* (1988), 170 Ill. App. 3d 643, 656-57, *appeal denied* (1988), 122 Ill. 2d 576. *Kohlmeier* followed numerous cases which held that section 155 of the Code preempted any common law tort action allowing for the recovery of punitive damages. (See *Kohlmeier*, 170 Ill. App. 3d at 656-57, and cases cited therein.) Section 155 provides for an award of attorney fees and an additional penalty in cases where an insurer's refusal or delay in payment of claims was vexatious or unreasonable. (Ill. Rev. Stat. 1985, ch. 73, par. 767.) Plaintiffs argue, however, that *Kohlmeier* nevertheless supports the viability of their claim for compensatory damages under count III and it should not have been dismissed. *Kohlmeier*, agreeing with *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, stated that, in appropriate cases, compensatory damages may be recovered for a breach of good faith and fair dealing. *Kohlmeier*, 170 Ill. App. 3d at 657.

Allstate argues *Hoffman* should not be viewed as recognizing a separate recovery in tort for compensatory damages arising out of a breach of an insurance contract because the count IV at issue in *Hoffman* was not described by the court as sounding in either tort or contract. The court in *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, however, recognized that a breach of the implied duty of good faith and fair dealing is both a breach of contract and a tort, and that a plaintiff is free to proceed with the theory of his choice. (*Ledingham*, 29 Ill. App. 3d at 344.) Consequently, the distinguishing feature Allstate notes is insufficient to defeat the authority of *Hoffman* and *Kohlmeier* recognizing such a cause of action.

Allstate's further contention is that plaintiffs' count III fails to allege any specific facts in support of their allegation that it "did intentionally refuse to deal fairly and act in good faith with plaintiffs." We agree.

Allstate's motion to dismiss takes as true all facts properly pleaded in the complaint. (*Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146.) Its motion does not admit, however, conclusions of law or fact which are unsupported by allegations of specific facts upon which such conclusions rest. (*Stuart Town Homes Corp. v. Rosewell* (1988), 176 Ill. App. 3d 59, 63-64.) Plaintiffs' count III fails to allege even one specific fact which, if proved, would support its allegation that Allstate refused to deal fairly or act in good faith. Accordingly, it was properly dismissed. Plaintiffs' argument in reply that it was error for the court to dismiss this count with prejudice with no opportunity for them to replead is belated and

cites no authority, and, consequently, the issue is waived. 107 Ill. 2d Rules 341(e)(7), (g).

The judgment of the circuit court of Winnebago County striking count III is affirmed. The judgment refusing to strike Allstate's first and second affirmative defenses is reversed, but is affirmed as to its refusal to strike Allstate's third, fourth and fifth affirmative defenses. Its judgment granting Allstate summary judgment is reversed, and the cause is remanded for further proceedings.

Affirmed in part; reversed in part and remanded.

INGLIS and WOODWARD, JJ., concur.